IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| WHITNEY, BRADLEY & BROWN, INC. ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CHRISTIAN L. KAMMERMANN ) <br> ) <br> Defendant. ) <br> ) | Civil Action No.# 01:09-cv-596 |



## MEMORANDUM OPINION

This case is before the Court on Defendant's Motion for Summary Judgment. Lt. Col. (Ret.) Christian L. Kammermann was employed full time by Plaintiff WBB from May 2004 through January 6, 2009. WBB is involved in consulting services to the defense industry. In May, 2006, Mr. Kammermann formed CLK Executive Decisions, LLC ("CLKED") and began providing services to clients of CLKED while still employed by WBB.

While employed by WBB, Mr. Kammermann submitted expense reports to WBB for reimbursement and was reimbursed for those expenses. On approximately 14 occasions, Mr. Kammermann submitted expense reports to CLKED clients for the same expenses, and was reimbursed twice for the same expense in the total amount of about $13,387.95. He also submitted time sheets to WBB (Mr.

Kammermann was salaried, and not an hourly employee) which WBB contends were not accurate. Mr. Kammermann contends that all timesheets submitted to WBB were accurate.

The Second Amended Complaint ("Complaint") consists of six counts (the last two counts are both identified as "Count V"). Jurisdiction of this Court is predicated upon 28 U.S.C. § 1331.

While incorporating the prior 95 paragraphs of the Complaint, the RICO claim is based on two allegations that Defendant knowingly misrepresented to WBB the hours that he worked, and that he submitted false expense reimbursement requests thereby receiving approximately $14,000 in expense reimbursements to which he was not entitled. Specifically:

> 101. As part of these schemes, Kammermann committed multiple predicate acts of mail fraud. WBB and other companies relied on Kammermann's material, knowingly fraudulent pretenses, representations and omissions of fact. Specifically, Kammermann knowingly misrepresented the hours he worked for WBB and other companies. Kammermann also sent travel expense reports to WBB and other companies to collect reimbursement from WBB and other companies for the same travel expenses. In doing so, Kammermann caused WBB and other companies to deposit and deliver payment checks to Kammermann.
>
> 102. As part of these schemes, Kammermann committed multiple predicate acts of wire fraud. WBB and other companies relied on Kammermann's material, knowingly fraudulent pretenses, representations and omissions of fact. Specifically, Kammermann knowingly misrepresented the hours he worked for WBB and other companies. Kammermann also sent travel expense reports to WBB and other companies to collect reimbursement from WBB and other companies for the same travel expenses. In doing so, Kammermann caused WBB and other companies to deposit and deliver payment checks to Kammermann.

Plaintiff contends Kammermann is liable under RICO based on double billing business expenses and misrepresenting the number of hours he worked.

Rule 56(c) provides that summary judgment should be entered if there is no genuine issue as to any material fact of the case. When a party fails to demonstrate the existence of an essential element of his case, then summary judgment should be granted as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The party bearing the burden of proof is required to produce some quantum of evidence at the summary judgment stage. Thompson v. Kings Entertainment Co., 674 F. Supp. 1194 (E.D. Va. 1987).

Kammermann was employed full-time by WBB from May 2004 through January 6, 2009. From May 2004 through 2007, his title was Manager, Army & Joint Concepts and Programs. During 2008 through the end of his employment with WBB, his title was Senior Manager, Army & Joint Concepts and Programs.

There was no employment contract, and Kammermann's employment was at-will. He was a salaried employee. From May, 2006 through the termination of his employment, he received approximately $558,674.69 in salary and bonuses, 401(k) matching, benefits, and ESOP payments.

From 2006 through the end of 2008, Kammermann developed approximately $2,307,000 in business for WBB. In 2006, he

developed about $642,000 in new business for WBB. In 2007, he developed $1,396,000 in business for WBB. In 2008, he developed $269,000 in business for WBB.

Kammermann started CLK Executive Decisions, LLC ("CLKED") during May 2006. CLKED is a business entity organized under Virginia law. CLKED provided services to individuals and/or companies located inside and outside Virginia and is engaged in interstate commerce. While he was employed by WBB, Kammermann engaged in outside employment as the Chief Executive Officer and President of CLKED from May 2006 until January 6, 2009.

From May 2006 to the end of his employment with WBB, Kammermann submitted his travel expense reports to WBB headquarters in Reston, Virginia by placing them in a Federal Express overnight envelope located at his administrative aide's desk in the Hampton, VA office. He submitted his travel expense reports to his CLKED clients by electronic copy attached to his e-mails. WBB sent travel expense payments from its Reston, Virginia office to Kammermann's WBB Hampton, Virginia office by Federal Express.

WBB contends that in 2008, in fourteen separate instances, Kammermann received about $13,387.95 in payments from WBB for expense reimbursements for which he also billed and received payments from his CLKED clients. As to these double billed expenses, Mr. Kammermann was reimbursed by his employer, WBB, and

five CLKED clients: Electrovaya, Freewave, Recon Robotics, Schiebel, and Security First. Kammermann does not dispute these allegations.

Kammermann's employment with WBB required him to submit timesheets which detailed both direct and indirect hours of work performed by Mr. Kammermann on behalf of WBB. Direct hours are hours that are billed to clients of WBB; indirect hours are not (i.e., time spent for business development, travel, and other non-billable activities). WBB contends that the time sheets submitted by Kammermann to WBB were not accurate.

WBB contends that on behalf of CLKED, Kammermann performed services and collected money from clients for work that was within the scope of work performed by WBB, and that while receiving a salary as a full-time employee of WBB, he performed work on behalf of CLKED that detracted from the time he could have been devoting to WBB. WBB contends that Kammermann, for his own benefit, solicited business from existing or potential WBB clients and otherwise diverted diverted opportunities.

Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . ." The statutory elements are: (a) racketeering

activity, (b) conducted through a pattern, (c) affecting an enterprise, and (d) an effect on interstate commerce. 18 U.S.C. § 1962. "Racketeering activity" consists of one or more of a number of "predicate acts". To establish liability under RICO, a plaintiff must prove the commission of two or more predicate acts in a manner constituting a pattern, which affect an enterprise. As the Fourth Circuit has observed:

> In enacting RICO, Congress was not concerned with ordinary business disputes involving allegations of business fraud or impropriety, but was attempting to address situations of long term criminal conduct. HJ. Inc. v. Northwestern Bell Telephone Co., Inc., 492 U.S. 229, 242 (1989). As repeatedly recognized in the Fourth Circuit, RICO's extraordinary remedies should not be expanded to encompass ordinary or isolated allegations of business fraud that often arise in commercial disputes. See e.g. Flip Mortgage Corp. v. McElhone, 841 F.2d 531, 538 (4th Cir. 1988).
> The "pattern" requirement is more than incidental to the operation of the RICO statute. In providing a remedy of treble damages for injury "by reason of a violation of" RICO's substantive provisions, 18 U.S.C. § 1964(c), Congress contemplated that only a party engaging in widespread fraud would be subject to such serious consequences. See S.Rep. No. 617, 91st Cong., 1st Sess. 158 (1969) U.S. Code Cong. & Admin. News ("One isolated 'racketeering activity' was thought insufficient to trigger the remedies provided under the proposed chapter, largely because the net would be too large and the remedies disproportionate to the gravity of the offense."); 116 Cong.Rec. 35193 (1970) (RICO "not aimed at isolated offender") (statement of Rep. Poff). The pattern requirement in § 1961(5) thus acts to ensure that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions; that treble damage suits are not brought against isolated offenders for their harassment and settlement value; and that the multiple state and federal laws bearing on transactions such as this one are not eclipsed or preempted.

Menasco, Inc. v. Wasserman, 886 F.2d 681 (4th Cir. 1989).

Section 1961(5) of RICO defines a "pattern of racketeering activity" as "at least two acts of racketeering activity . . . the last of which occurred within ten years after the commission of a prior act of racketeering activity." However, a "pattern" means more than simply the commission of two acts of racketeering activity.

The Supreme Court addressed the requirement that more than two predicate acts are necessary in order to establish a pattern in H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989). The Court held:

> A pattern is not formed by 'sporadic activity,' and a person cannot be subjected to the sanctions of title IX simply for committing two widely separated and isolated criminal offenses. Instead, '[t]he term 'pattern' itself requires the showing of a relationship' between the predicates, and of the threat of continuing activity. It is this factor of continuity plus relationship which combines to produce a pattern.

H.J., Inc., 492 U.S. at 239, 109 S.Ct. at 2900 (Scalia, J., concurring) (internal citations and quotations omitted).

The Supreme Court further held in H.J., Inc. that "[t]o establish a RICO pattern it must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, continuing racketeering activity." Id. at 240. Continuity is an essential element of the "pattern of racketeering activity" requirement necessary to establish a RICO claim.

In H.J. Inc., the Court described two classifications of

"continuity plus relationship" which would result in a "pattern" for purposes of RICO: "closed-ended" schemes and "open-ended" schemes. Id., at 241-242. A "closed-ended" scheme is one in which a "series of related predicates extend[s] over a substantial period of time," while an "open-ended scheme" is one which includes the "threat of continuity . . . [conduct] that by its nature projects into the future with a threat of repetition." 492 U.S. at 240-42.

Thus, in order to establish that the alleged actions of the Defendant have the "continuity" necessary to sustain an allegation of a "pattern" of racketeering activity, the Plaintiff needs to establish that the activity constitutes either an open ended scheme or a close ended scheme. Here, the facts viewed most favorably to the Plaintiff fail to demonstrate that Defendant's actions constitute either. At most, the Complaint describes a disloyal employee who was fired.

An open ended scheme involves a threat of continuity. Courts will generally consider whether a specific threat of repetition exists, whether the predicates are a regular way of conducting an ongoing legitimate business, or whether the predicates are part of an enterprise that exists for criminal purposes. GICC Capital Corp. v. Technology Fin. Group, 67 F.3d 463 (2d Cir. 1995); Libertad v. Welch, 53 F.3d 428 (1st Cir. 1995); Viacom, Inc. v. Harbridge Merchants Servs., 20 F.3d 771 (7th Cir. 1994);

Allwaste, Inc. v. Hecht, 65 F.3d 1523 (9th Cir. 1995); Teamsters Local 372 v. Detroit Newspapers, 956 F. Supp. 753 (E.D. Mich. 1997).

Courts have refused to find open ended continuity where the racketeering activity was not actually continuing when the court considered the defendant's motion to dismiss. McMahon v. Spano, No. Civ. A-96-3957, 1996 WL 627590 (E.D.Pa. 1996) (unpublished) (noting that "[a] full year has now passed since defendants' most recent alleged racketeering activities in October 1995"); Cf., Smithfield Foods, Inc. v. United Food and Commercial Workers Intern. Union, 633 F.Supp.2d 214, 227 (E.D. Va. 2008) (noting that the alleged racketeering activity continued even after the filing of the Complaint).

Although Plaintiff makes a pro-forma allegation of a threat of continued racketeering activity, there is no evidence that the activity continued beyond December, 2008 or that such activity was continuing at the time the Complaint was filed in this matter. There is absolutely no evidence that any of the activities continue to the present.

In the Fourth Circuit, the failure to allege a threat of continuity is fatal to a RICO claim. See Anderson v. Foundation for Advancement, 155 F.3d 500, 506 (4th Cir. 1998)(citing Menasco, Inc. v. Wasserman, 886 F.2d 681, 684 (4th Cir. 1989)). In Anderson, the Fourth Circuit held that the District Court for

the Western District of Virginia erred in entering default judgment against the defendant for discovery violations as to plaintiff's RICO claim because plaintiff failed to state a claim upon which relief could be granted. The Court held that even though plaintiff alleged the requisite two minimum predicate acts (mail fraud), it did not find "that the use of the telephone and mail services to defraud [plaintiff] * * * evidence[d] 'ongoing unlawful activity whose scope and persistence pose a special threat to social well-being." Id. at 506 (quoting Menasco, 886 F.2d at 681. See also Menasco, 886 F2.d at 685 ("If the pattern requirement has any force whatsoever, it is to prevent this type of ordinary commercial fraud from being transformed into a federal RICO claim.")

Plaintiff cannot establish any ongoing scheme sufficient to make out an "open ended" scheme or any "ongoing unlawful activity whose scope and persistence pose a special threat to social well-being." 18 U.S.C. § 1961. The predicate acts alleged by Plaintiff consists of a series of expense reports submitted by Defendant to both Plaintiff and certain of his CLKED clients, for which he received reimbursement. The activities took place during 2008. There is no evidence of a threat of ongoing racketeering activity. In the Fourth Circuit, the failure to establish facts supporting an inference of an ongoing scheme "whose scope and persistence pose a special threat to the social well-being" is

fatal to a RICO claim. Anderson, 155 F.3d at 506. This is fatal to Plaintiff's attempt to establish an open ended scheme.

Thus, there is no "pattern of racketeering activity existed and . . . plaintiffs must seek recourse outside the RICO statute." Menasco, 886 F.2d at 683.

Plaintiff also cannot establish a close ended scheme. Most circuits, including the Fourth Circuit, have adopted multi-factor tests for determining whether a pattern of racketeering has sufficient closed-ended continuity to satisfy the requirement of a "pattern" of activity. The factors generally include: (a) the length of time over which the alleged predicate acts were ommitted, (b) the number of predicate acts, (c) the variety of predicate acts, (d) the number of participants, (e) the number of victims, (f) the presence of separate schemes, and (g) the occurrence of distinct injuries. See Resolution Trust Corp. v. S & K Chevrolet, 868 F.Supp. 1047, 1060 (C.D. Ill. 1994) (citing Morgan v. Bank of Waukegan, 804 F.2d 970 (7th Cir.1986)); HMK Corp. v. Walsey, 828 F.2d 1071, 1073 (4th Cir. 1987) (noting that the Fourth Circuit has adopted an approach similar to that applied in Morgan). The factors are applied "to prevent ordinary commercial fraud from being transformed into a federal RICO claim." Menasco, 886 F.2d at 685. Of particular importance is the scale, duration and number of victims of the scheme. Id. "RICO is reserved for those schemes whose scope and persistence set them

above the routine." Id.

The length of time is a "central" aspect to determine whether a pattern exists. See H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 241, 42, 109 S.Ct. 2893, 2901-02, 106 L.Ed. 2d 195 (1989)(emphasizing that "continuity" is "centrally a temporal concept"). In the Eighth and Ninth Circuits, the length of time of the alleged scheme may be dispositive. See Religious Technology Ctr. v. Wollersheim, 971 F.2d 364, 366-67 (9th Cir. 1992) (pattern of activity lasting only a few months does not reflect long term criminal conduct to which RICO was intended to apply); Primary Care Investors v. PHP Healthcare Corp., 986 F.2d 1208, 1215-16 (8th Cir. 1993) (impliedly establishing per se rule that racketeering activity must last for more than one year); Wisdom v. First Midwest Bank, 167 F.3d 402, 407 (8th Cir. 1999) (finding ten month period too short to establish closed-end pattern). The Third Circuit has held on several occasions that "conduct lasting no more than twelve months [does] not meet the standard for closed-ended continuity." Tabas v. Tabas, 47 F.3d 1280, 1293 (3d Cir.) (citing cases). See also Peterson v. H & R Block Tax Servs., Inc., 22 F.Supp.2d 795, 805 (N.D. Ill. 1998) (finding no pattern despite more than 14,000 victims where single mail fraud scheme lasted only thirteen weeks).

The Fourth Circuit has found that a scheme lasting only two years is insufficient to establish a closed-ended scheme GE

Investment Private Placement Partners II v. Parker, 247 F.3d 543 (4th Cir. 2001), and has affirmed a judgment of this Court dismissing a RICO claim involving only seven months. See Leonard v. J.C. Pro Wear, Inc., 94-1498, 1995 WL 508894 (4th Cir. 1995) (unpublished). In Menasco, Inc. v. Wasserman, 886 F.2d 681, 684 (4th Cir.1989), the Court refused to find a closed ended scheme where the alleged activities took place over one year. Cf. Walk v. Baltimore and Ohio R.R., 890 F.2d 688, 690 (4th Cir.1989) (RICO claim established where activity occurred over ten year period); also, Cf., Smithfield Foods, Inc. v. United Food and Commercial Workers Intern. Union, 633 F.Supp.2d 214, 227 (E.D. Va. 2008) (noting that the alleged racketeering activity established over 18 months, but noting that activity continued even after the filing of the Complaint).

The courts of other Circuits have also been reluctant to find the necessary continuity where the alleged scheme encompasses the relatively short period that is alleged in the present case. For example, in GICC Capital Corp. v. Tech. Fin. Group, 67 F.3d 463 (2nd Cir. 1995), cert. denied, 518 U.S. 1017 (1996), the Second Circuit held that an alleged scheme over an eleven month period did not satisfy the pattern requirement. The Third Circuit has held, as a matter of law, that twelve months is not a substantial period of time for alleging a pattern of racketeering activity. Hughes v. Consol.-Pa. Coal Co., 945 F.2d

594, 611 (3rd Cir. 1991), cert. denied 504 U.S. 955 (1992).

The alleged double billing activities in this case took place over a twelve month period from January, 2008 through December 2008.

All inferences which can fairly be drawn from the Complaint and the evidence indicate a limited number of predicate acts, weighing against the establishment of a RICO claim. Plaintiff contends that, on approximately fourteen separate instances, Kammermann double billed expenses, and that such double-billing was accomplished through mail and/or wire fraud. Assuming the accuracy of this, fourteen predicate acts over a twelve month period is insufficient to make out a case for RICO.

In determining whether predicate acts form a pattern of racketeering activity as required for civil claim under RICO, the Fourth Circuit is especially cautious when the acts involved are mail and wire fraud, inasmuch as it will be the unusual fraud that does not enlist the mails and wires in its service at least twice. Anderson, 155 F.3d at 506. The Fourth Circuit hesitates to find civil RICO liability for a "pattern of racketeering activity" predicated on acts of mail and wire fraud because of the sheer scope of fraud cases involving use of the mail and wires." SecureInfo Corp., 387 F.Supp.2d at 614.

The limited variety of predicate acts, and the reliance upon mail fraud as a predicate act, weighs heavily against a finding

of a "pattern of racketeering activity." See Peterson v. H & R Block Tax Servs., Inc., 22 F.Supp.2d 795, 805 (N.D.Ill.1998) (finding no pattern despite more than 14,000 victims where single mail fraud scheme lasted only thirteen weeks).

The participants consist of Defendant and his limited liability company. There is no indication that there were any other individuals involved in creating or submitting either false expense reimbursement requests or false timesheets. The limited number of participants weighs against the establishment of a valid RICO claim.

In the Fourth Circuit, a limited number of victims may suffice to demonstrate that the conduct alleged does not rise to the level of conduct necessary to support a RICO recovery. In Tudor Assoc. v. AJ & AJ Servicing, 36 F.3d 1094 (4th Cir. 1994) (unpublished), the Court held that despite the fact that the scheme lasted over 10 years and involved millions of dollars, it did not rise to the level of conduct necessary to support a RICO recovery because it only involved a single scheme to inflict a single injury on a single victim. The Seventh Circuit reached a similar conclusion, holding that a small number of fraudulent mailings directed to a single plaintiff is not be sufficient to establish a pattern. Corley v. Rosewood Care Center, Inc., 142 F.3d 1041, 1049-50 (7th Cir. 1998). See Al-Abood ex rel. Al-Abood v. El-Shamari, 217 F.3d 225 (4th Cir 2000) (limited number of

victims weighing against finding of RICO).

Here, it appears that Plaintiff is attempting to establish one victim - itself - of the double expense report billing or misrepresenting his time to his employer. At most, there are six: WBB and five CLKED clients: Electrovaya, Freewave, Recon Robotics, Schiebel, and Security First. (While Defendant denies that any time reports submitted to WBB were incorrect, there is no evidence that Defendant submitted false time reports to any entity other than WBB.) To the extent that Plaintiff contends that there was a misrepresentation of hours worked, there is one victim - WBB.

The Complaint alleges a single scheme — misrepresentations made in order to obtain expense reimbursements from WBB. The existence of a single scheme ways very heavily against the establishment of a RICO pattern. <u>Tudor Assoc. v. AJ & AJ Servicing</u>, 36 F.3d 1094 (4th Cir. 1994) (unpublished); <u>see also</u> <u>Peterson v. H & R Block Tax Servs., Inc.</u>, 22 F. Supp.2d 795, 805 (N.D. Ill. 1998) (finding no pattern despite more than 14,000 victims where single mail fraud scheme lasted only thirteen weeks).

The Complaint is silent as to any allegation concerning any damage suffered by any entity or individual. At most, the Complaint alleges that WBB was caused to issue checks based upon fraudulent activity, thereby alleging a single injury to a single

victim.

Considering all the facts in the light most favorable to the Plaintiff, this case "does not fall 'sufficiently outside the heartland of fraud cases to warrant RICO treatment.'" GE Investment Private Placement Partners II v. Parker, 247 F.3d 543, 551 (4th Cir. 2001)(citing Al-Abood, 217 F.3d at 238).

With the federal claim resolved, there is no diversity jurisdiction in this case and the state claims should be dismissed without prejudice to be pursued in state court. An appropriate Order shall issue.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
July 7, 2010